**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 1 3 2007

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

ARKANSAS STATE HOSPITAL,

PLAINTIFF,

v.                    CASE NO:   4 - 0 7 - C V - 0 0 6 2 4 SWW

MICHAEL O. LEAVITT, in his official capacity
as Secretary of the United States Department
of Health and Human Services; LESLIE V. NORWALK,
in her official capacity as Acting Administrator
of the Centers for Medicare and Medicaid Services.

This case assigned to District Judge _Wright_
and to Magistrate Judge _Young_

DEFENDANTS.

## COMPLAINT

Plaintiff, the Arkansas State Hospital, by and through the Office of Chief

Counsel, Arkansas Department of Human Services, hereby submits the following

complaint for declaratory and injunctive relief:

### I.   PRELIMINARY STATEMENT

1.      This case arises under Title XVIII of the Social Security Act, 42 U.S.C. §§

1395-1395hhh (commonly known as the "Medicare Act"), and the Administrative

Procedure Act, 5 U.S.C. §§ 701-706.

2.      The Medicare Provider Reimbursement Review Board ("PRRB") has

granted expedited judicial review in United States District Court of the issues of law

posed by this controversy, pursuant to § 42 U.S.C. § 1395oo(f)(1). Exhibit P-6.

3.      This case arises from a dispute between the plaintiff and its Medicare

Fiscal Intermediary, Pinnacle Business Solutions, Inc. ("Pinnacle") regarding the

amount of Medicare reimbursement due to the plaintiff for its Medicare cost reporting year beginning July 1, 2004 and ending June 30, 2005.

4.      Underlying this dispute is the Center for Medicare and Medicaid Services' ("CMS") interpretation of a statute implementing a cap in federal fiscal years 1998-2002 on Medicare reimbursement for providers such as the plaintiff. CMS's interpretations and regulatory guidance were relied upon by the plaintiff's CMS-contracted Fiscal Intermediary, Pinnacle, as authority for its actions in reducing the plaintiff's Medicare reimbursement for the cost year ending June 30, 2005.

5.      The plaintiff maintains that the CMS's interpretation of the applicable statute is contrary to the express terms of the statute, and is an unauthorized extension of the statute's effect beyond the time period specified by Congress. As such, plaintiff maintains that the actions of CMS and its contractor are arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The plaintiff is now suffering economic injury as a result of the unauthorized actions of CMS and its contractor.

## II.    PARTIES

6.      Plaintiff Arkansas State Hospital is an acute-care inpatient psychiatric hospital located at 4313 West Markham Street, Little Rock, AR, 72205, and provides Medicare Part A services to Medicare beneficiaries. The Arkansas State Hospital is a state-owned hospital operated by the Division of Behavioral Health of the Arkansas Department of Human Services, an Executive Branch agency of the State of Arkansas. Plaintiff's Medicare provider number is 04-4011.

7.     Defendant Michael O. Leavitt is the Secretary of the United States Department of Health and Human Services ("DHHS"), an agency of the Executive Branch of the United States Government.  He is responsible for the administration of all agencies under DHHS, and all statutes entrusted to DHHS by Congress, including the Medicare Act.  He is sued in his official capacity.

8.     Defendant Leslie V. Norwalk is the Acting Administrator of the Center for Medicare and Medicaid Services (CMS), the arm of the United States DHHS charged with administering the Medicare Act.  She is sued in her official capacity.

## III.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh ("Medicare Act") and under 28 U.S.C. § 1331.  Specific jurisdiction is further conferred upon this Court by the "expedited judicial review" provision of 42 U.S.C. § 1395oo(f)(1).  The Medicare Provider Reimbursement Review Board's ("PRRB") grant of expedited judicial review was received by the plaintiff on May 18, 2007.  Exhibit P-6.

10.    Declaratory and injunctive relief is sought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202.

11.    Venue lies with this court pursuant to 42 U.S.C. § 1395oo(f)(1), which states that actions for expedited judicial review of questions of law which the PRRB has determined it is without authority to decide "shall be brought in the District Court of the United States for the judicial district in which the provider is located."

## IV.     STATEMENT OF FACTS

### 1.    Medicare Cost Reporting Year

12.    For Medicare Part A purposes, the plaintiff's hospital-specific cost reporting year runs from July 1 to June 30 of each year.

13.    The cost reporting year at dispute in this case is the cost reporting year ending June 30, 2005.

14.    Pinnacle Business Solutions, Inc. ("Pinnacle") is the CMS-contracted Fiscal Intermediary in the State of Arkansas, and serves as the agent of CMS for purposes of Medicare Part A provider reimbursement in the State of Arkansas.

15.    Medicare Part A providers receive interim payments for billed Medicare services from their Fiscal Intermediary during a cost year. After the end of each cost reporting year, providers file cost reports with their Fiscal Intermediary. These cost reports are used by the Fiscal Intermediary to calculate the provider's reimbursable costs, and this amount is reconciled with the amount of interim payments, to arrive at a net amount due to the provider ("reimbursement") or to the Medicare program ("overpayment").

### 2.    Medicare Reimbursement Methodology

16.    For its 2005 cost year, the plaintiff, as an inpatient psychiatric hospital, was excluded from the Medicare prospective payment system ("PPS") and instead was reimbursed on a reasonable cost basis.

17.    A PPS-excluded provider's per-discharge Medicare reimbursement for a given year is limited to the lower of (a) its costs or (b) a set amount referred to as a "TEFRA target amount," 42 U.S.C. §§ 1395ww(b). The provider's original TEFRA target amount is determined by the provider's hospital-specific Medicare costs in its

4

base year, and is subject to annual rate-of-increase percentages set by CMS for all similarly-situated providers.

### 3. TEFRA "Cap" Statute

18.     PPS-excluded providers were also subject to a nationwide 75th-percentile cap on their TEFRA target amounts for their cost reporting years that began in federal fiscal years 1998-2002.  This 75th-percentile cap was enacted by Congress as part of the Balanced Budget Act Amendments of 1997, Pub. L. 105-33 at § 4414 (1997), *codified at* 42 U.S.C. § 1395ww(b)(3)(H).

### 4. CMS's Interpretations of the Statute

19.     CMS's implementing regulation for 42 U.S.C. § 1395ww(b)(3)(H) is codified at 42 C.F.R. § 413.40(c)(4)(iii).  In promulgating this regulation, CMS simply stated that "for cost reporting periods beginning during FY 1999 through 2002, the Secretary shall update the resulting [75[th]-percentile capped] amount by the market basket percentages."  62 Fed. Reg. 46,018 (Aug. 29, 1997).

20.     In 2000, in the context of implementing regulations for a new prospective payment system, CMS stated that "the wage-adjusted caps on target amounts are only legislated to remain in effect from FY 2000 to FY 2002," and "we will only be in a position to continue the use of the wage-adjusted caps on the target amounts beyond FY 2002 if Congress directs us to do so through additional legislation." 65 Fed. Reg. 47,098 (Aug. 1, 2000).

21.     In 2002, CMS stated that "effective for cost reporting periods beginning during FY 2003, payments to existing excluded hospitals will no longer be subject to a 75[th] percentile cap…[these hospitals] will be paid based on their aggregate

Medicare inpatient operating costs, which may not exceed their ceiling." 67 Fed. Reg. 50,133 (Aug 1, 2002). In the same document, however, CMS stated "for cost reporting periods beginning in FY 2003, the hospital or unit should use its previous year's target amount." 67 Fed. Reg. at 50,103-04.

22.     In 2005, CMS then stated "[I]f a provider was paid the cap amount in FY 2002, the target amount for FY 2003 would be the cap amount paid in FY 2002, updated to FY 2003 (that is, the target amount from the previous year updated by the applicable update factor)." 70 Fed. Reg. 47,464 (Aug. 12, 2005).

### 5.     2005 Cost Year Dispute

23.     Plaintiff's last cost year subject to the 75th-percentile cap on TEFRA target amounts was its cost year running from July 1, 2002 to June 30, 2003.

24.     Plaintiff determined that its hospital-specific, non-capped TEFRA target rate for the cost year ending June 30, 2005 was $14,714.09.

25.     On May 11, 2005, Pinnacle sent a "Notice of Adjustment to the TEFRA Target Rate" to the Plaintiff. This letter informed plaintiff that its TEFRA target rate for the cost year ending June 30, 2005 would be $11,664.18. Exhibit P-3. This lower TEFRA target amount represented a 75th-percentile cap-based amount for the previous cost year, increased by an inflation factor.

26.     Plaintiff nevertheless used its hospital-specific, non-capped TEFRA target rate of $14,714.09 in its provider cost report for the cost year ending June 30, 2005, based on its belief that cap-based rates should no longer be used because the statutory time period had expired and Congress had not directed CMS to extend the cap beyond the statutory period. Exhibit P-2 at p.1, line item 55.

27.     The plaintiff's as-filed cost report for the cost year ending June 30, 2005 calculated a net overpayment of $140,169 due to the Medicare program from the plaintiff. Exhibit P-2 at p.2, line item 20.  Plaintiff paid this amount to Pinnacle as a "tentative settlement" on December 11, 2005.

28.     On October 11, 2006, Pinnacle notified plaintiff of proposed adjustments to its cost report for the year ending June 30, 2005.  These adjustments were based on an audit of the cost report that Pinnacle conducted.  Among other things, Pinnacle adjusted the plaintiff's TEFRA target rate to the cap-based amount of $11,664.18. Exhibit P-4 at p.2.

29.     On December 20, 2006, Pinnacle sent a Notice of Amount of Program Reimbursement ("NPR") to the plaintiff for the cost year ending June 30, 2005. Exhibit P-1.  In the NPR, Pinnacle informed the plaintiff that it owed a net overpayment of $362,263 to the Medicare program. Exhibit P-1 at p.3.

30.     Pinnacle's assessment of the higher overpayment amount can be attributed to a $175,363 discrepancy between the plaintiff's as-filed reimbursable costs and Pinnacle's adjusted reimbursable costs for the 2005 cost year.  This discrepancy in reimbursable costs resulted from Pinnacle's use of the cap-based TEFRA target amount, and some minor, non-disputed adjustments to the cost report.

31.     To date, the plaintiff has not paid the $362,263 overpayment to the Medicare program, and Pinnacle has begun assessing interest on the overpayment amount.

**6.     Grant of Expedited Judicial Review**

32.     Pursuant to the applicable Medicare administrative procedure, the plaintiff

filed a "Request for PRRB Hearing / Request for Grant of EJR" with the Provider

Reimbursement Review Board ("PRRB") regarding the above dispute on April 11,

2007. The PRRB acknowledged receipt of the plaintiff's request for hearing on April

18, 2007. Exhibit P-5.

33.     By certified mail dated May 14, 2007, the PRRB informed the plaintiff

that it found (1) it had jurisdiction over this matter; (2) there were no findings of fact

for resolution by the Board; (3) it was bound by applicable Medicare law and

regulations; and (4) it was without the authority to decide the legal question of

whether the applicable regulation is valid. Exhibit P-6. Accordingly, the PRRB

granted expedited judicial review of this action to the plaintiff pursuant to 42 U.S.C. §

1395oo(f)(1). The plaintiff received this letter on May 18, 2007. Exhibit P-6 at p. 4.

## V.     CAUSE OF ACTION – ADMINISTRATIVE PROCEDURE ACT

34.     The defendants' actions in interpreting the applicable 75th-percentile cap

statute and continuing to apply cap-based rates, rather than hospital-specific TEFRA

target amounts beyond the statutory period, are (1) clearly inconsistent with the

express terms of the statute, (2) an unauthorized extension of an express statutory

time period beyond the time specified in the statute, (3) an exercise of administrative

authority not granted to it by Congress and not otherwise committed to agency

discretion, and (4) an administrative action based on inadequately-explained and

conflicting interpretations of a statute and a CMS regulation promulgating that

statute.  As such, the defendants' actions are arbitrary and capricious, an abuse of

discretion, and in excess of statutory authority in violation of the Administrative

Procedure Act, 5 U.S.C. §§ 701-706. The defendants' unauthorized actions have resulted in direct and ongoing economic injury to the plaintiff.

**WHEREFORE**, the plaintiff respectfully requests that this court:

35.     Issue a declaratory judgment that the defendants' actions in (1) interpreting the statute and its regulation in a manner contrary to the express terms of the statute and (2) applying a 75th-percentile cap on TEFRA target amounts in the plaintiff's cost year ending June 30, 2005, are arbitrary and capricious, an abuse of discretion, and in excess of statutory authority or limitations, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

36.     Issue an injunction ordering the defendants to recalculate the plaintiff's reimbursable Medicare costs for the cost year ending June 30, 2005 using the plaintiff's uncapped, and hospital-specific TEFRA target rates;

37.     Issue an injunction (1) setting aside the defendants' Notice of Program Reimbursement ("NPR") of December 20, 2006 and any subsequent overpayment or interest assessments based on that NPR, and (2)  directing the defendants to issue a new NPR consistent with the calculation set forth in Paragraph 36 of this complaint;

38.     Issue an injunction (1) enjoining the defendants from using cap-based TEFRA target rates in any manner, shape or form, and (2) enjoining the defendants from using expired, cap-based TEFRA rates as the basis for any calculations of the plaintiff's Medicare reimbursement under any present or future Medicare reimbursement mechanism, unless or until Congress directs otherwise; and

39.     Grant any further relief that this court may deem to be just.

Dated: July 13, 2007.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES

OFFICE OF CHIEF COUNSEL

By: _____

Breck Hopkins, Interim Chief Counsel
Arkansas Bar No. 77067
Arkansas Department of Human Services
Office of Chief Counsel
P.O. Box 1437, Slot S-260
Little Rock, AR 72203-1437

ATTORNEY FOR PLAINTIFF
ARKANSAS STATE HOSPITAL





**MEDICARE**
Part A Intermediary
Part B Carrier

December 20, 2006

MR CHARLES SMITH, ADM
ARKANSAS STATE HOSPITAL
4313 WEST MARKHAM
LITTLE ROCK AR 72205

Re:   NOTICE OF AMOUNT OF PROGRAM REIMBURSEMENT
      FINAL SETTLEMENT          Period Ended  06/30/05
      Provider Name      ARKANSAS STATE HOSPITAL
      Provider No.       04-4011

Dear Mr. Smith

In accordance with Regulation Section 405.1803, this letter is a Notice of Amount of Medicare Program Reimbursement (NPR) for the above period. Revision of this Notice may be required by the findings of a review of this or any prior or subsequent cost report within three years from the date above.

The Compu-Max NPR schedules summarize total allowable cost recognized by the Medicare Program and total Medicare reimbursable cost for this reporting period. The figures in Column 1 were entered from your initial cost report, and the figures in Column 2 were entered from the revised cost report attached.

The adjustments that produced the differences between the revised report and the filed report are on the adjustment report enclosed. The adjustment report also includes, where necessary, the appropriate references to and citations of applicable law, regulations and manual instructions used as a basis for these adjustments.

If you are dissatisfied with the determination, please refer to the attachment regarding your appeal rights. If requested, we will meet with you or your representative to discuss any problems or questions you may have regarding the adjustments. Any discussions relating to these adjustments will not prejudice your right to an appeal.

EXHIBIT

P-1

The settlement summary shows an amount payable to the Medicare program of
$362,263.

If you have any questions regarding this notice, please contact me at (501) 918-7433.

Sincerely,

Joe Kemper
Audit Supervisor
Provider Audit & Reimbursement

JSK/an

Attachments
Enclosures

EXHIBIT

P-1 (p 2)

Provider: ARKANSAS STATE HOSPITAL
FYE:          6/30/2005

### Settlement Summary

| Provider # | | Part A | | Part B | | Total | |
|---|---|---|---|---|---|---|---|
| 04-4011 | Hospital | $ | (362,263.00) | $ | | $ | (362,263.00) |
| N/A | Swing Bed | $ | | $ | | $ | |
| N/A | SNF | $ | | $ | | $ | |
| N/A | Home Health Agency | $ | | $ | | $ | |
| N/A | Subprovider I | $ | | | 0 | $ | |
| N/A | Subprovider II | $ | | | 0 | $ | |
| N/A | Hospice | $ | | | 0 | $ | |
| N/A | ESRD | | | | | $ | |
| N/A | Rural Health Clinic | | | | | $ | |
| | Settlement Due to Provider/(To Program) | $ | (362,263.00) | $ | | $ | (362,263.00) |



EXHIBIT

P-1 (p.3)

EXHIBIT 1

TITLE XVIII A

PROVIDER NOT UNDER PPS - PART A
PROVIDER NAME: HOSPITAL (TEFRA)    PROVIDER NO: 04-0011    TEFRA HOSPITAL

FYE: 06/30/2005

SCHEDULE FOR NPR PURPOSES COMPARING 'AS FILED' AMOUNTS TO THE INTERMEDIARY DETERMINATION AMOUNTS
CMS-2552-96 - Final Settlement

| PRM REFERENCE (S 2906) | DESCRIPTION | WORKSHEET E-3 PART 1 LINE | PROVIDER'S COST REPORT AS-FILED | INTER-MEDIARY'S DETER-MINATION | ADJUST-MENT |
|---|---|---|---|---|---|
| A. | TOTAL PART A MEDICARE REIMBURSEMENT (INCLUDING ALLOWABLE BAD DEBTS) ON A COST BASIS: | | A.2 | A.1 | |
| 1 | COST OF COVERED SERVICES | 6-1.04 | 1499146 | 1322798 | -176348 |
| 2 | LIP PAYMENT | 1.04 | 0 | 0 | 0 |
| 3 | PRIMARY PAYOR PAYMENTS | 5 | 0 | 0 | 0 |
| 4 | SUBTOTAL (SUM OF LINES 1-3) | | 1499146 | 1322798 | -176348 |
| 5 | REIMBURSABLE BAD DEBTS | 11.01 | 29589 | 30574 | 985 |
| 6 | GRADUATE MEDICAL EDUCATION | 13 | 0 | 0 | 0 |
| 7 | RECOVERY OF EXCESS DEPRECIATION (TERMINATION OR DECREASE IN HI UTIL) | 14 | 0 | 0 | 0 |
| 8 | AMOUNTS APPL TO PRIOR PERIODS FROM DISPOSAL OF DEPRECIABLE ASSETS | 16 | 0 | 0 | 0 |
| 9 | SUBTOTAL (SUM OF LINES 4 - 8, MINUS LINE 7, PLUS OR MINUS LINE 8) | | 1528735 | 1353372 | -175363 |
| 10 | PROTESTED ITEMS | 21 | 0 | XXXXXXXX | 0 |
| 11 | OTHER ADJUSTMENTS & PASS THROUGH COSTS | 15+15.01 | 0 | 0 | 0 |
| 12 | TOTAL (LINE 9 PLUS OR MINUS LINE 11) | | 1528735 | 1353372 | -175363 |
| A.3 | PAYMENTS MADE TO THE PROVIDER: | | | | |
| 13 | PRIMARY PAYOR PAYMENTS (FROM LINE 3) | | 0 | 0 | 0 |
| 14 | DEDUCTIBLES (PROVIDER ONLY) | 7 | 87971 | 89353 | 1382 |
| 15 | COINSURANCE (PROVIDER ONLY) | 9 | 410064 | 489948 | 79884 |
| 16 | INTERIM PAYMENTS | 19 | 1170869 | 1276503 | 105634 |
| 17 | TENTATIVE PAYMENTS | 19.01 | 0 | -140169 | -140169 |
| 18 | SEQUESTRATION ADJUSTMENT | 18 | 0 | 0 | 0 |
| 19 | NET TOTAL AMOUNT PAYABLE (LINE 12 LESS LINES 13,14,15,17) | | 1030700 | 774071 | -256629 |
| 20 | TOTAL PAYMENTS (SUM OF LINES 13 - 18) | | 1668904 | 1715635 | 46731 |
| 21 | NET AMOUNT DUE TO PROVIDER OR (DUE TO PROGRAM)(LINE 12 MINUS LINE 20) | 20 | -140169 | -362263 | -222094 |



EXHIBIT
P-1 (p.4)

EXHIBIT 2

PROVIDER NOT UNDER PPS - PART B
PROVIDER NAME: HOSPITAL (TEFRA)     PROVIDER NO: 04-4011     TEFRA HOSPITAL     FYE: 06/30/2005     TITLE XVIII B

SCHEDULE FOR NPR PURPOSES COMPARING 'AS FILED' AMOUNTS TO THE INTERMEDIARY DETERMINATION AMOUNTS
CMS-2552-96 - Final Settlement

| PRM REFERENCE (§ 2906) | DESCRIPTION | WORKSHEET E PART B LINE | PROVIDER'S COST REPORT AS-FILED | INTER- MEDIARY'S DETER- MINATION | ADJUST- MENT |
|---|---|---|---|---|---|
| A. | TOTAL PART B MEDICARE REIMBURSEMENT (INCLUDING ALLOWABLE BAD DEBTS) ON A COST BASIS: | | A.1 | A.2 | |
| 1 | COST OF COVERED SERVICES | 5 | 0 | 0 | 0 |
| 2 | REDUCTION FOR EXEMPTION FROM LCC (20% OF LINE 1) | | 0 | 0 | 0 |
| 3 | SUBTOTAL (LINE 1 MINUS LINE 2) | | 0 | 0 | 0 |
| 4 | GRADUATE MEDICAL EDUCATION | 21+22 | 0 | 0 | 0 |
| 5 | AMOUNTS FROM WKST E, PARTS C, D AND E | 20 | 0 | 0 | 0 |
| 6 | REIMBURSABLE BAD DEBTS | 26+27.01 | 0 | 0 | 0 |
| 7 | RECOVERY OF EXCESS DEPRECIATION (TERMINATION OR DECREASE IN HI UTIL) | 29 | 0 | 0 | 0 |
| 8 | AMOUNTS APPL TO PRIOR PERIODS FROM DISPOSAL OF DEPRECIABLE ASSETS | 31 | 0 | 0 | 0 |
| 9 | SUBTOTAL (SUM OF LINES 3 - 6, MINUS LINE 7, PLUS OR MINUS LINE 8) | | 0 | 0 | 0 |
| 10 | PROTESTED AMOUNTS | 36 | 0 | XXXXXXXX | 0 |
| 11 | OTHER ADJUSTMENTS | 30 | 0 | 0 | 0 |
| 12 | PPS PAYMENT | 17.01 | 0 | 0 | 0 |
| 13 | TOTAL (LINE 9 PLUS LINE 12 PLUS OR MINUS LINE 11) | | 0 | 0 | 0 |
| A.3 | REDUCTIONS TO THE TOTAL AMOUNT PAYABLE FOR PART B: | | | | |
| 14 | PRIMARY PAYOR PAYMENTS | 24 | 0 | 0 | 0 |
| 15 | DEDUCTIBLES AND COINSURANCE | 18 | 0 | 0 | 0 |
| 16 | REDUCTION FOR EXEMPTION TO LCC (20% OF LINE 15) | | 0 | 0 | 0 |
| 17 | INTERIM PAYMENTS | 34 | 0 | 0 | 0 |
| 18 | TENTATIVE PAYMENTS | 34.01 | 0 | 0 | 0 |
| 19 | SEQUESTRATION ADJUSTMENT | 33 | 0 | 0 | 0 |
| 20 | NET TOTAL AMOUNT PAYABLE (LINE 13 LESS LINES 14,15,16,19) | | 0 | 0 | 0 |
| 21 | TOTAL REDUCTIONS (SUM OF LINES 14 - 19) | | 0 | 0 | 0 |
| 22 | NET AMOUNT DUE TO PROVIDER OR (DUE TO PROGRAM)(LINE 13 MINUS LINE 21) | 35 | 0 | 0 | 0 |



EXHIBIT
P-1 (p 5)

COMPUTATION OF INPATIENT OPERATING COST

Case 4:07-cv-00624-BSM   Document 1   Filed 07/13/07   Page 16 of 26

I                        I PERIOD:              I  PREPARED 11/29/2005
I  PROVIDER NO:          I FROM 7/ 1/2004  I    WORKSHEET D-1
I  04-4011              I                       I  PART II
I  COMPONENT NO:        I TO 6/30/2005    I
I  04-4011              I                       I

TITLE XVIII PART A          HOSPITAL              TEFRA

PART II - HOSPITAL AND SUBPROVIDERS ONLY

1

PROGRAM INPATIENT OPERATING COST BEFORE
PASS THROUGH COST ADJUSTMENTS

| | | | | | |
|---|---|---|---|---|---|
| 38 | ADJUSTED GENERAL INPATIENT ROUTINE SERVICE COST PER DIEM | | | | 397.40 |
| 39 | PROGRAM GENERAL INPATIENT ROUTINE SERVICE COST | | | | 2,623,635 |
| 40 | MEDICALLY NECESSARY PRIVATE ROOM COST APPLICABLE TO THE PROGRAM | | | | |
| 41 | TOTAL PROGRAM GENERAL INPATIENT ROUTINE SERVICE COST | | | | 2,623,635 |

| | | TOTAL I/P COST 1 | TOTAL I/P DAYS 2 | AVERAGE PER DIEM 3 | PROGRAM DAYS 4 | PROGRAM COST 5 |
|---|---|---|---|---|---|---|
| 42 | NURSERY (TITLE V & XIX ONLY) INTENSIVE CARE TYPE INPATIENT HOSPITAL UNITS | | | | | |
| 43 | INTENSIVE CARE UNIT | | | | | |
| 44 | CORONARY CARE UNIT | | | | | |
| 45 | BURN INTENSIVE CARE UNIT | | | | | |
| 46 | SURGICAL INTENSIVE CARE UNIT | | | | | |
| 47 | OTHER SPECIAL CARE | | | | | |

| | | | |
|---|---|---|---|
| 48 | PROGRAM INPATIENT ANCILLARY SERVICE COST | | 1 |
| 49 | TOTAL PROGRAM INPATIENT COSTS | | 2,623,635 |

PASS THROUGH COST ADJUSTMENTS

| | | |
|---|---|---|
| 50 | PASS THROUGH COSTS APPLICABLE TO PROGRAM INPATIENT ROUTINE SERVICES | |
| 51 | PASS THROUGH COSTS APPLICABLE TO PROGRAM INPATIENT ANCILLARY SERVICES | 42,451 |
| 52 | TOTAL PROGRAM EXCLUDABLE COST | 42,451 |
| 53 | TOTAL PROGRAM INPATIENT OPERATING COST EXCLUDING CAPITAL RELATED, NONPHYSICIAN ANESTHETIST, AND MEDICAL EDUCATION COSTS | 2,581,184 |

TARGET AMOUNT AND LIMIT COMPUTATION

| | | |
|---|---|---|
| 54 | PROGRAM DISCHARGES | 90 |
| 55 | TARGET AMOUNT PER DISCHARGE | 14,714.09 |
| 56 | TARGET AMOUNT | 1,324,268 |
| 57 | DIFFERENCE BETWEEN ADJUSTED INPATIENT OPERATING COST AND TARGET AMOUNT | -1,256,916 |
| 58 | BONUS PAYMENT | |
| 58.01 | LESSER OF LINES 53/54 OR 55 FROM THE COST REPORTING PERIOD ENDING 1996, UPDATED AND COMPOUNDED BY THE MARKET BASKET | 5,400.78 |
| 58.02 | LESSER OF LINES 53/54 OR 55 FROM PRIOR YEAR COST REPORT, UPDATED BY THE MARKET BASKET | 15,199.65 |
| 58.03 | IF LINES 53/54 IS LESS THAN THE LOWER OF LINES 55, 58.01 OR 58.02 ENTER THE LESSER OF 50% OF THE AMOUNT BY WHICH OPERATING COSTS (LINE 53) ARE LESS THAN EXPECTED COSTS (LINES 54 x 58.02), OR 1 PERCENT OF THE TARGET AMOUNT (LINE 56) OTHERWISE ENTER ZERO. | |
| 58.04 | RELIEF PAYMENT | |
| 59 | ALLOWABLE INPATIENT COST PLUS INCENTIVE PAYMENT | 132,427 |
| 59.01 | ALLOWABLE INPATIENT COST PER DISCHARGE (LINE 59 / LINE 54) (LTCH ONLY) | 1,499,146 |
| 59.02 | PROGRAM DISCHARGES PRIOR TO JULY 1 | |
| 59.03 | PROGRAM DISCHARGES AFTER JULY 1 | |
| 59.04 | PROGRAM DISCHARGES (SEE INSTRUCTIONS) | |
| 59.05 | REDUCED INPATIENT COST PER DISCHARGE FOR DISCHARGES PRIOR TO JULY 1 (SEE INSTRUCTIONS) (LTCH ONLY) | |
| 59.06 | REDUCED INPATIENT COST PER DISCHARGE FOR DISCHARGES AFTER JULY 1 (SEE INSTRUCTIONS) (LTCH ONLY) | |
| 59.07 | REDUCED INPATIENT COST PER DISCHARGE (SEE INSTRUCTIONS) (LTCH ONLY) | |
| 59.08 | REDUCED INPATIENT COST PLUS INCENTIVE PAYMENT (SEE INSTRUCTIONS) | |

PROGRAM INPATIENT ROUTINE SWING BED COST

| | | |
|---|---|---|
| 60 | MEDICARE SWING-BED SNF INPATIENT ROUTINE COSTS THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD (SEE INSTRUCTIONS) | |
| 61 | MEDICARE SWING-BED SNF INPATIENT ROUTINE COSTS AFTER DECEMBER 31 OF THE COST REPORTING PERIOD (SEE INSTRUCTIONS) | |
| 62 | TOTAL MEDICARE SWING-BED SNF INPATIENT ROUTINE COSTS | |
| 63 | TITLE V OR XIX SWING-BED NF INPATIENT ROUTINE COSTS THROUGH DECEMBER 31 OF THE COST REPORTING PERIOD | |
| 64 | TITLE V OR XIX SWING-BED NF INPATIENT ROUTINE COSTS AFTER DECEMBER 31 OF THE COST REPORTING PERIOD | |
| 65 | TOTAL TITLE V OR XIX SWING-BED NF INPATIENT ROUTINE COSTS | |



EXHIBIT
P-2

CALCULATION OF REIMBURSEMENT SETTLEMENT

Case 4:07-cv-00624-BSM   Document 1   Filed 07/13/07   Page 17 of 26

PROVIDER NO:   PERIOD:   PREPARED 11/29/2005
04-4011   FROM 7/ 1/2004   WORKSHEET E-3
COMPONENT NO:   FROM   5/30/2005   PART I
04-4011

PART I - MEDICARE PART A SERVICES -   TEFRA AND IRF PPS AND LTCH PPS
HOSPITAL

| | | |
|---|---|---|
| 1 | INPATIENT HOSPITAL SERVICES (SEE INSTRUCTIONS) | 1,499,146 |
| 1.01 | HOSPITAL SPECIFIC AMOUNT (SEE INSTRUCTIONS) | |
| 1.02 | ENTER FROM THE PS&R, THE IRF PPS PAYMENT | |
| 1.03 | MEDICAID SSI RATIO (IRF PPS ONLY) (SEE INSTR.) | |
| 1.04 | INPATIENT REHABILITATION FACILITY LIP PAYMENTS (SEE INSTRUCTIONS) | |
| 1.05 | OUTLIER PAYMENTS | |
| 1.06 | TOTAL PPS PAYMENTS (SUM OF LINES 1.01, 1.02, 1.04 AND 1.05) | |
| 1.07 | NURSING AND ALLIED HEALTH MANAGED CARE PAYMENT (SEE INSTRUNCTIONS) | |
| 1.08 | NET FEDERAL IPF PPS PAYMENTS (EXCLUDING OUTLIER, ECT, STOP-LOSS, AND MEDICAL EDUCATION PAYMENTS) | |
| 1.09 | NET IPF PPS OUTLIER PAYMENTS | |
| 1.10 | NET IPF PPS ECT PAYMENTS | |
| 1.11 | UNWEIGHTED INTERN AND RESIDENT FTE COUNT FOR LATEST COST REPORT FILED PRIOR TO NOVEMBER 15, 2004 (SEE INSTRUCTIONS) | |
| 1.12 | NEW TEACHING PROGRAM ADJUSTMENT. (SEE INSTRUCTIONS) | |
| 1.13 | CURRENT YEARS UNWEIGHTED FTE COUNT OF I&R OTHER THAN FTES IN THE FIRST 3 YEARS OF A "NEW TEACHING PROGRAM". (SEE INST.) | |
| 1.14 | CURRENT YEARS UNWEIGHTED I&R FTE COUNT FOR RESIDENTS WITHIN THE FIRST 3 YEARS OF A "NEW TEACHING PROGRAM". (SEE INST.) | |
| 1.15 | INTERN AND RESIDENT COUNT FOR IPF PPS MEDICAL EDUCATION ADJUSTMENT (SEE INSTRUCTIONS) | |
| 1.16 | AVERAGE DAILY CENSUS (SEE INSTRUCTIONS) | |
| 1.17 | MEDICAL EDUCATION ADJUSTMENT FACTOR (((1 + (LINE 1.15/1.16)) RAISED TO THE POWER OF .5150 - 1). | |
| 1.18 | MEDICAL EDUCATION ADJUSTMENT (LINE 1.08 MULTIPLIED BY LINE 1.17). | |
| 1.19 | ADJUSTED NET IPF PPS PAYMENTS (SUM OF LINES 1.08, 1.09, 1.10 AND 1.18) | |
| 1.20 | STOP LOSS PAYMENT FLOOR (LINE 1 x 70%) | |
| 1.21 | ADJUSTED NET PAYMENT FLOOR (LINE 1.19 x THE APPROPRIATE FEDERAL BLEND PERCENTAGE) | |
| 1.22 | STOP LOSS ADJUSTMENT (IF LINE 1.21 IS GREATER THAN LINE 1.19 ENTER THE AMOUNT ON LINE 1.21 LESS LINE 1.19 OTHERWISE ENTER -0-) | |
| 1.23 | TOTAL IPF PPS PAYMENTS (SUM OF LINES 1.01, 1.19 AND 1.22) | |
| 2 | ORGAN ACQUISITION | |
| 3 | COST OF TEACHING PHYSICIANS | |
| 4 | SUBTOTAL (SEE INSTRUCTIONS) | 1,499,146 |
| 5 | PRIMARY PAYER PAYMENTS | |
| 6 | SUBTOTAL | 1,499,146 |
| 7 | DEDUCTIBLES | 87,971 |
| 8 | SUBTOTAL | 1,411,175 |
| 9 | COINSURANCE | 410,064 |
| 10 | SUBTOTAL | 1,001,111 |
| 11 | REIMBURSABLE BAD DEBTS   (EXCLUDE BAD DEBTS FOR PROF SERVS) | 42,270 |
| 11.01 | ADJUSTED REIMBURSABLE BAD DEBTS (SEE INSTRUCTIONS) | |
| 11.02 | REIMBURSABLE BAD DEBTS FOR DUAL ELIGIBLE BENEFICIARIES | 29,589 |
| 12 | SUBTOTAL | 1,030,700 |
| 13 | DIRECT GRADUATE MEDICAL EDUCATION PAYMENTS | |
| 13.01 | OTHER PASS THROUGH COSTS (SEE INSTRUCTIONS) | |
| 14 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION | |
| 15 | OTHER ADJUSTMENTS (SPECIFY) | |
| 16 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS | |
| 17 | TOTAL AMOUNT PAYABLE TO THE PROVIDER (SEE INSTRUCTIONS) | 1,030,700 |
| 18 | SEQUESTRATION ADJUSTMENT (SEE INSTRUCTIONS) | |
| 19 | INTERIM PAYMENTS | 1,170,869 |
| 19.01 | TENTATIVE SETTLEMENT (FOR FISCAL INTERMEDIARY USE ONLY) | |
| 20 | BALANCE DUE PROVIDER/PROGRAM | -140,169   ← |
| 21 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH CMS PUB. 15-II, SECTION 115.2. | |



EXHIBIT
P-2 (p.2)

S2-96 v1400.093

May 11, 2005

MR GLENN SAGO, ADM
ARKANSAS STATE HOSPITAL
4313 WEST MARKHAM
LITTLE ROCK AR 72205

RE:     NOTICE OF ADJUSTMENT TO THE TEFRA TARGET RATE FOR
        PROVIDER  ARKANSAS STATE HOSPITAL
        PROVIDER NO. 04-4011     FYE 06/30/05

Dear Mr. Sago:

In accordance with Regulations promulgated at Title 42, Code of Federal Regulations, Section 413.40, we have determined that the target amount per discharge for your facility for the cost reporting period beginning   7/01/04  and ending  06/30/05   is $11,664.18 .

This amount was calculated by applying an update factor of  3.4 % to your previous period's target amount as follows:

| | |
|---|---|
| Target amount for cost reporting period Beginning  7/01/03 | $11,280.64 |
| Applicable update factor | 1.034 |
| Revised target amount for cost reporting Period beginning  7/01/04 | $11,664.18 |

Medicare reimbursement is limited to the lower of the TEFRA target amount or cost.

If you have any questions, please call me at (501) 918-7457.

Sincerely,

C D B

Curt D. Burroughs
Reimbursement Specialist
Provider Audit & Reimbursement

CDB:amn



EXHIBIT
P-3

** TOTAL PAGE.06 **

**CMS/**
CENTERS for MEDICARE & MEDICAID SERVICES

**Pinnacle**
BUSINESS SOLUTIONS, INC.

**MEDICARE**
**Part A Intermediary**
**Part B Carrier**

October 11, 2006

MR GLENN SAGO, ADMINISTRATOR
ARKANSAS STATE HOSPITAL
4313 WEST MARKHAM
LITTLE ROCK, AR 72205

**RECEIVED**

OCT 2 4 2006

ARKANSAS STATE HOSPITAL
ADMINISTRATION

SUBJECT:   ADJUSTMENT REPORT

PROVIDER NAME Arkansas State Hospital
PROVIDER #04- 4011    YEAR END 6-30-05

Dear Mr. Sago:

Enclosed is a report of proposed adjustments to your Medicare
Statement of Reimbursable Cost for the period ended
6-30-05                 .  Please review these adjustments carefully.

If you do not agree with the adjustments, please contact me at
(501) 918-7433     to discuss the areas of disagreement and to
arrange for submission of additional documentation or other
evidence in support of your position.  If I have not heard from
you by  11-3-06       , the cost report will be reworked to include
the audit adjustments and to establish a Notice of Program
Reimbursement (NPR) settlement amount.  Any changes after issuance
of the NPR will be handled through the reopening process.

Sincerely,

Joe Kemper, Audit Supervisor
PROVIDER AUDIT & REIMBURSEMENT

Enclosures

cc:  Brent Beaulieu, CPA
     Baird, Kurtz, Dobson

*Tefra - Protest*
*Rate adjustment -*



EXHIBIT
P-4

```
                                                                    RUN DATE: 09/05/2006    PAGE 2
VIDER NAME: ARKANSAS STATE HOSPITAL        PROVIDER NUMBER: 04-4011   FISCAL PERIOD: 07/01/2004 TO 06/30/2005
```

| DJ WS P F T | LINE | COLUMN | A6/A8 LTR LINE | EXPLANATION OF AUDIT ADJUSTMENTS | AS REPORTED | INCREASE/ DECREASE | AS ADJUSTED | W/P REF. |
|---|---|---|---|---|---|---|---|---|
| 1 B1 | 100.04 | 3 | | GUEST MEALS | 151 | 37 | 188 | |
| 1 B1 | 100.04 | 4 | | GUEST MEALS | 151 | 37 | 188 | |
| 1 B1 | 100.04 | 8 | | GUEST MEALS | 151 | 37 | 188 | |
| 1 B1 | 100.04 | 10 | | GUEST MEALS<br>TO ADJUST SQUARE FOOTAGE PER REVIEW<br>42 CFR 413.20   [WP P-1] | 151 | 37 | 188 | |
| 2 D1 2 H 18 | 55 | 1 | | Target amount per discharge<br>TO ADJUST TEFRA RATE PER REVIEW<br>42 CFR 413.40   [WP J-6] | 14,714.09 | -3,049.91 | 11,664.18 | |
| 3 D1 2 H 18 | 58.01 | 1 | | Trended Costs (Line 55 from cost report ended in 1996) | 5,400.78 | 10.45 | 5,411.23 | |
| 3 D1 2 H 18 | 58.02 | 1 | | Expected Costs (Line 55 from prior year cost report)<br>TO ADJUST INCENTIVE PAYMENT PER REVIEW<br>42 CFR 413.20   [WP  J-7] | 15,199.65 | -3,535.47 | 11,664.18 | |
| 4 S3 1 | 1 | 4 | | Hospital Adults & Peds. | 6,602 | 623 | 7,225 | |
| 4 S3 1 | 1 | 13 | | Hospital Adults & Peds.<br>TO ADJUST PROVIDER'S COST REPORT TO<br>INTERMEDIARY DATA  REF: 42 CFR<br>412.110/413.20 CMS PUB. 15-1 SEC 2408.4<br>[WP J-1] | 90 | 10 | 100 | |
| 5 D4  H 18 | 25 | 2 | | Adults & Pediatrics<br>TO ADJUST PROVIDER'S COST REPORT TO<br>INTERMEDIARY DATA  REF: 42 CFR<br>412.110/413.20 CMS PUB. 15-1 SEC 2408.4<br>[WP J-1] | 3,416,485 | -508,410 | 2,908,075 | |
| 6 E3 1 H | 7 | 1 | | Deductibles | 87,971 | 1,382 | 89,353 | |
| 6 E3 1 H | 9 | 1 | | Coinsurance<br>TO ADJUST PROVIDER'S COST REPORT TO<br>INTERMEDIARY DATA  REF: 42 CFR<br>412.110/413.20 CMS PUB. 15-1 SEC 2408.4<br>[WP J-1] | 410,064 | 79,884 | 489,948 | |
| 7 E1  H | 1 | 2 | | Total interim payments paid to provider<br>TO ADJUST PROVIDER'S COST REPORT TO<br>INTERMEDIARY DATA  REF: 42 CFR<br>412.110/413.20 CMS PUB. 15-1 SEC 2408.4<br>[WP J-1] | 1,170,869 | 105,634 | 1,276,503 | |



EXHIBIT
P-4 (p. 2



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670

Phone: 410-786-2671                    FAX: 410-786-5298

Suzanne Cochran, Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

APR 1 9 2007

## CERTIFIED MAIL

Arkansas Dept. of Health and Human Services
Breck Hopkins
Chief Deputy Counsel
Office of Chief Counsel
P.O. Box 1437, Slot S-260
Little Rock, AR  72203-1437

RE:  Acknowledgement and Critical Due Dates
     Case Number:  07-1850
     Date Filed:  4/10/2007
     Provider Name:  Arkansas State Hospital
     Provider Number:  04-4011
     Appealed Year – FYE:  6/30/2005

The Provider Reimbursement Review Board ("Board") has received your request for a hearing.  You will need to obtain a copy of the Board's instructions which are located on the Board's web site at http://www.cms.hhs.gov/PRRBReview/02_PRRB_Instructions.asp.  If internet access is not available to you, you may call the Board at (410) 786-2671 and request that a copy be mailed to you.

You must reference the case number and provider information on all correspondence with the Board.  If any of the above information is incorrect, you must inform the Board, in writing, within 30 days of this letter.

## DUE DATES

**1st of August 2007**
Provider's Preliminary Position Papers due to Intermediary (with letter to the Board certifying that preliminary position paper due date has been met and copy of the first page only of the preliminary position paper).

**1st of October 2007**
Intermediary's Preliminary Position Papers due to Provider (with letter to the Board certifying that preliminary position paper due date has been met and copy of the first page only of the preliminary position paper).

**1st of December 2007**
Final position papers due to the Board from both Parties.


EXHIBIT
P-5 (P.1)

Page 2

## DISMISSALS

You are responsible for pursuing your appeal in accordance with the Board's procedures, which are outlined in the Board's Instructions. You must file your position papers, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. If you miss any of your due dates including meeting either position paper due date, the Board will dismiss your appeal. The Board will not send a due date reminder. If the Intermediary fails to meet its deadlines, the Board will contact the Centers for Medicare and Medicaid Services (CMS) about contract compliance and will schedule a hearing date.

## TENTATIVE HEARING DATE

**April 2008:** Tentative month and year of hearing.

The Board will send you a Notice of Board Hearing to notify you of the specific time, date and location of the hearing. The Notice of Hearing will be issued at least 30 days prior to the actual hearing date.

## OPTIONS

You may make a written request, at any time, that:
    Your month of hearing be rescheduled to an earlier month;
    Your case be heard based on the submitted record;
    Your case be conducted by video or teleconference;
    Your case be resolved through alternative dispute resolution/mediation;
    Your case be reviewed in a pre-hearing conference with a Board member.

If you request any of these options, you must continue to meet with the due dates set forth in this letter until you are advised regarding your request by the Board.



Steven R. Kirsh, Director
Division of Jurisdiction & Case Management

cc:   Pinnacle Business Solutions, Inc.
      Amanda Crosby, CPA
      Provider Audit and Reimbursement
      P.O. Box 1418
      Little Rock, AR  72203-1418

      Wilson C. Leong
      BC & BS Association
      225 North Michigan Avenue
      Chicago, IL  60601-7680





DEPARTMEN    )F HEALTH AND HUMAN SERVI    3
PROVIDER REIMBURSEMENT REVIEW BOARD
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

Refer to:

07-1850                                              MAY 1 4 2007

CERTIFIED MAIL

Breck Hopkins, Esq.
Chief Deputy Counsel
Office of General Counsel
Arkansas Department of Health & Human Services
P.O. Box 1437, Slot S-260
Little Rock, AR 72203-1437

> RE: Arkansas State Hospital
> Provider No. 04-4011
> FYE 6/30/05
> PRRB Case No. 07-1850

Dear Mr. Hopkins:

This is in response to the Provider's request that the Provider Reimbursement Review Board (Board) grant expedited judicial review pursuant to 42 U.S.C. § 1395oo(f)(1). The question is whether the regulation, 42 C.F.R. § 405.40(c)(4)(ii), is valid. The Provider believes that its Medicare reimbursement should not be calculated using a TEFRA[1] target rate that was capped at the 75th percentile; rather, the Provider's hospital-specific rate in the fiscal year end June 30, 2005 should be used for the calculation.

The Board has reviewed the submission of the Provider pertaining to the request for hearing and expedited judicial review. The documentation shows that the estimated amount in controversy for the appeal exceeds $10,000, as required for an individual appeal. The estimated amount in controversy is subject to recalculation by the Intermediary for the actual final amount.

The Board finds that:

1) it has jurisdiction over the matter for the subject year and the Provider is entitled to a hearing before the Board;

2) based upon the Provider's assertions regarding the issue, there are no findings of fact for resolution by the Board;

3) it is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

---

[1] Section 1886(b) of the Social Security Act, also known as the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Public L. 97-248 (1982), establishes payments to Medicare providers based on hospital-specific limits for inpatient operating costs. Codified at 42 U.S.C. § 1395ww(b).

EXHIBIT
P-6 (P.1)

4) it is without the authority to decide the legal question of whether the regulation, 42 C.F.R. § 405.40(c)(4)(ii), is valid.

Accordingly, the Board finds that the issue involving the validity of 42 C.F.R. § 405.40(c)(4)(ii) properly falls within the provisions of 42 U.S.C. § 1395oo (f)(1) and hereby grants the Provider's request for expedited judicial review for the issue. The Provider has 60 days from the receipt of this decision to institute the appropriate action for judicial review. Since this is the only issue under dispute, the Board hereby closes the case.

Board Members Participating

    Suzanne Cochran, Esq.
    Gary B. Blodgett, DDS
    Elaine C. Powell, CPA
    Anjali Mulchandani-West
    Yvette C. Hayes

                    FOR THE BOARD:

                    Suzanne Cochran, Esq.
                    Chairman

Enclosures: 42 U.S.C. § 1395oo (f)(1)

cc: Amanda Crosby, Pinnacle Business Solutions
    Wilson Leong, BCBSA



**(f) Finality of decision; judicial review; determinations of Board authority; jurisdiction; venue; interest on amount in controversy**

(1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title. Any appeal to the Board or action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) of this section must be brought by such providers as a group with respect to any matter involving an issue common to such providers.

(2) Where a provider seeks judicial review pursuant to paragraph (1), the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180-day period as determined pursuant to subsection (a)(3) of this section and equal to the rate of return on equity capital established by regulation pursuant to section 1395x(v)(1)(B) of this title and in effect at the time the civil action authorized under paragraph (1) is commenced, to be awarded by the reviewing court in favor of the prevailing party.

(3) No interest awarded pursuant to paragraph (2) shall be deemed income or cost for the purposes of determining reimbursement due providers under this chapter.



Thank you for using Return Receipt Service

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature

X
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

**Reference Information**

07-1850

PRRB

Domestic Return Receipt

7140 3701 9449 5151 1985

2. Article Number

3. Service Type   CERTIFIED MAIL
4. Restricted Delivery? (Extra Fee)   ☐ Yes
1. Article Addressed to:

Breck Hopkins, Esq., Chief Deputy
Counsel, Office of General Counsel
Arkansas Department of Health & Human
Services
P.O. Box 1437, Slot S-260
Little Rock, AZ 72205-1437

PS Form 3811, January 2005

▲ RETURN RECEIPT REQUESTED
USPS MAIL CARRIER
DETACH ALONG PERFORATION ▲

Thank you for using Return Receipt Service

**CERTIFIED MAIL**

7140 3701 9449 5151 1985

**RETURN RECEIPT REQUESTED**

U.S. Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive
Suite L
Baltimore, MD 21244-2670

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE ONLY

Breck Hopkins, Esq., Chief Deputy Counsel,
Office of General Counsel
Arkansas Department of Health & Human
Services
P.O. Box 1437, Slot S-260
Little Rock, AZ 72205-1437

72205-1437 E012

US POSTAGE
$05.21⁰
05/14/2007

**EXHIBIT**
P-6 (P.4)