IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ARKANSAS STATE HOSPITAL                                              PLAINTIFF

v.                           CASE NO.  4:07CV00624

MICHAEL O. LEAVITT, Secretary, U.S.
Department of Health and Human Services,
et al.                                                               DEFENDANTS

**ORDER**

This is a Medicare reimbursement case in which the parties have filed competing motions for summary judgment [Docs. ## 19 & 22].  For the reasons set forth below, the court denies plaintiff's motion for summary judgment and grants defendants' motion for summary judgment.

I.  UNDISPUTED FACTS

The following facts are not in dispute.  The plaintiff, Arkansas State Hospital (State Hospital), is an acute care inpatient psychiatric hospital that provides services to Medicare beneficiaries under Medicare Part A.  The Center for Medicare and Medicaid Services (CMS) administers the Medicare program on behalf of the Secretary of the United States Department of Health and Human Services.  The State Hospital is excluded from Medicare's prospective payment system and is reimbursed for its Medicare covered services on a reasonable cost basis pursuant to 42 U.S.C. § 1395ww.

In accordance with the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324, the State Hospital is reimbursed for its actual reasonable

costs up to a maximum reimbursement per case. The maximum reimbursement is defined for each hospital and is commonly referred to as the "target amount." Claims are processed and paid by a private contractor known as a fiscal intermediary. Pinnacle Medical Services of Arkansas (Blue Cross-Blue Shield) is the fiscal intermediary responsible for reimbursing the State Hospital.

In 1997, Congress enacted the Balanced Budge Act of 1997 (BBA), Pub. L. No. 105-33, 111 Stat. 251. The BBA included a cap provision, codified at 42 U.S.C. § 1395ww(b)(3)(H), requiring CMS to impose maximum target amounts on certain categories of hospitals. The BBA's cap provision covered cost reporting periods spanning from 1998 to 2002. The BBA's reporting period coincides with the State Hospital's five cost reporting periods from July 1998 to June 2003.

The State Hospital's cost year for Medicare purposes runs from July 1 to June 30 of each year. For its cost reporting periods subject to TEFRA before July 1998, the State Hospital's target amount was calculated by starting with the target amount for the previous cost reporting period and applying a percentage increase specified in the statute and regulations existing at that time. The State Hospital's cost reporting periods from July 1998 to June 2003 were subject to the cap provision in the BBA.

On August 1, 2002, prior to the expiration of the cap provision, CMS issued a Federal Register notice indicating that a hospital's target amount in fiscal year 2003 would not be calculated according to 42 C.F.R. § 413.40(c)(4)(iii). The notice provided that the target

amount for fiscal year 2003 would be set at the hospital's "previous year's target amount, updated by the appropriate rate-of-increase percentage" according to 42 C.F.R. § 413.40(c)(4)(ii).

For the cost year ending June 30, 2005, the State Hospital calculated its payments due using a target amount per discharge of $14,714.09. On May 11, 2005, the fiscal intermediary notified the State Hospital that its target amount per discharge for the cost year ending June 2005 should be $11,664.18. The fiscal intermediary reached this figure by applying an update factor of 3.4 percent to the previous years' target amount per discharge of $11,280.64 in accordance with the statute and regulations in effect at that time. The fiscal intermediary notified the State Hospital on October 11, 2006, of a proposed adjustment to the payment claimed by the State Hospital. In the notice, the fiscal intermediary indicated that the State Hospital's reported target amount per discharge of $14,714.09 was incorrect and that the State Hospital should have used a target amount per discharge of $11,664.18.

On December 20, 2006, the fiscal intermediary sent the State Hospital a Notice of Amount of Program Reimbursement (NPR) for the cost year ending June 30, 2005. The notice stated that State Hospital owed the Medicare Program $362,263.

On April 11, 2007, the State Hospital requested a hearing and expedited judicial review with the Medicare Provider Reimbursement Review Board. By letter dated May 14, 2007, the Medicare Provider Reimbursement Review Board granted the State Hospital's request for expedited judicial review. The State Hospital filed this action on July 13, 2007,

alleging that CMS's method of calculating the State Hospital's target rate for cost year 2005 is contrary to the express terms of 42 U.S.C. § 1395ww (b)(3)(H).  The State Hospital also alleges that CMS's method of calculating its target rate is an unauthorized extension of the statute's effect beyond the time period specified by Congress.  For these reasons, the State Hospital alleges that CMS's actions are arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

## II.  STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact suitable for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, *247, 106 S. Ct. 2505, **2509-10 (1986); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, *1541 (8th Cir. 1996); *Unlaub Co., Inc. v. Sexton*, 568 F.2d 72, *76 (8th Cir. 1977); *Camden County Council on Econ. Opportunity v. U.S. Dep't of Health & Human Servs.*, 563 F. Supp. 2d 262, *265 (D.D.C. 2008); *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 529 F. Supp. 2d 1110, *1117 (N.D. Cal. 2007).  A fact is material if the dispute over it might affect the outcome of the suit under the governing law.  *Computer Aided Design Sys., Inc. v. Safeco Life Ins. Co.*, 235 F. Supp. 2d 1052, *1056-57 (S.D. Iowa 2002).  When both sides have moved for summary judgment there are no facts in dispute.  *Id*.  When reviewing an agency action intended by Congress to carry the force of law, substantial deference is afforded to the

agency's interpretation of the statutes and regulations it administers. *Central S.D. Coop. Grazing Dist. v. Secretary of U.S. Dep't of Agric.*, 266 F.3d 889, *894 (8th Cir. 2001).

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984), the United States Supreme Court discussed the two step procedure to be used by the courts when reviewing an agency's construction of a statute that it administers. *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, *986, 125 S. Ct. 2688, **2702 (2005). First, the court must ask whether Congress has directly spoken to the precise question at issue. *Chevron*, 467 U.S. at *842, 104 S. Ct. at **2781; *see National Cable*, 545 U.S. at *986, 125 S. Ct. at **2702; *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, *132, 120 S. Ct. 1291, **1300 (2000). If Congress has done so, the inquiry is at an end; the court must give effect to the unambiguously expressed intent of Congress. *Food & Drug Admin.*, 529 U.S. at *132, 120 S. Ct. at **1300; *Chevron*, 467 U.S. at *842-43, 104 S. Ct. at **2781-82. If Congress has not specifically addressed the question, the next question for the court is whether the agency's answer is based on a permissible construction of the statute. *Chevron*, 467 U.S. at *843, 104 S. Ct. at **2782; *Baptist Health v. Thompson*, 458 F.3d 768, *775 (8th Cir. 2006).

In determining whether Congress's intent is clear, the traditional tools of statutory construction are employed. *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, *500 (9th Cir. 2007); *Splane v. West*, 216 F.3d 1058, *1068 (Fed. Cir. 2000). Thus, the court begins with the text of the statute itself. *Splane*, 216 F.3d at *1068. The reviewing court should not

confine itself to examine a particular statutory provision in isolation. *Food & Drug. Admin.*, 529 U.S. at *132, 120 S. Ct. at **130. The meaning or ambiguity of certain words or phrases may only become evident when placed in context. *Id.*, 120 S.Ct. at **1300-01. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. *Id.* at *133, 120 S. Ct. at **1301; *Clark v. U.S. Dep't of Agri.*, 537 F.3d 934, *940 (8th Cir. 2008). A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a harmonious whole. *Id.*; *see Sursely v. Peake*, 22 Vet. App. 21, *24 (2007). Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand. *Food & Drug Admin.*, 529 U.S. at *133, 120 S. Ct. at **1301. Common sense should also be employed as a guide as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency. *Id.*

The United States Supreme Court has recognized that the power of an administrative agency to administer a congressionally created program necessarily requires the formation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, *2345 (2007); *Chevron*, 467 U.S. at *843, 104 S. Ct. at **2782. Thus, when a statute is ambiguous and an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the court defers to the agency's reasonable interpretation. *See National Cable*, 545 U.S. at *986, 125

S. Ct. at \*\*2702; *Clark*, 537 F.3d at \*939.  This is often referred to as *Chevron* deference. *See TeamBank, N.A. v. McClure*, 279 F.3d 614, \*618 (8th Cir. 2002); *Wright v. Everson*, \_\_ F.3d \_\_ (11th Cir. Sept. 24, 2008);  *De La Mota v. The United States Dep't of Educ.*, 412 F.3d 71, \*78 (2d Cir. 2005).

*Chevron* deference requires courts to give considerable weight to an executive department's construction of a statutory scheme it is entrusted to administer. *TeamBank*, 279 F.3d at \*618.  Under *Chevron*, such decisions are controlling unless they are arbitrary, capricious, or manifestly contrary to the statute. *Id.*; *see Clark*, 537 F.3d at \*939.  An agency rule is arbitrary and capricious if the agency relied on factors that Congress did not intend for it to consider, "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wright*, \_\_ F.3d at \_\_ (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867 (1983)).

*Chevron* deference is not afforded to every interpretation of a statute by an agency. *TeamBank*, 279 F.3d at \*619.  *Chevron* deference is reserved for interpretations reached through relatively formal administrative procedures, such as noticed-and-comment rule making or formal adjudication. *Id*.  Agency interpretations that are found in opinion letters, policy statements, agency manuals, or enforcement guidelines lack the force of law and are not entitled to deference under *Chevron*.  *In re Union Pacific R.R. Employment Practices*

*Litigation*, 479 F.3d 936, *943 (8th Cir. 2007).

The Supreme Court has held that an administrative agency's interpretation warrants some deference even when it is registered informally, as long as that agency has a delegated authority to administer the statute and the views are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge. *Cleary ex rel Cleary v. Waldman*, 167 F.3d 801, *807-08 (3d Cir. 1999). The weight of such judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control. *Skidmore v. Swift & Co.*, 323 U.S. 134, *140, 65 S. Ct. 161, **164 (1944); *De La Mota*, 412 F.3d at *78. This lesser deferential standard is referred to as the *Skidmore* standard. *See Clark*, 537 F.3d at *940.

### III.  DISCUSSION

Title 42, section 1395ww(b)(3)(H) (West 2008), the statute at issue, clearly provides that the cap on target amounts expired September 30, 2002. The statute is somewhat unclear, however, as to the factors to be taken into account in calculating target amounts after September 30, 2002. Indeed, the statute in its entirety reads as follows:

> In the case of a hospital or unit that is within a class of hospital described in clause (iv), for a cost reporting period beginning during fiscal years 1998 through 2002, the target amount for such a hospital or unit may not exceed the amount as updated up to or for such cost reporting period under clause (ii).
>
> (ii)(I) In the case of a hospital or unit that is within a class of hospital

> described in clause (iv), the Secretary shall estimate the 75th percentile of the target amounts for such hospitals within such class for cost reporting periods ending during fiscal year 1996, as adjusted under clause (iii).
>
> (II) The Secretary shall update the amount determined under subclause (I), for each cost reporting period after the cost reporting period described in such subclause and up to the first cost reporting period beginning on or after October 1, 1997, by a factor equal to the market basket percentage increase.
>
> (III) For cost reporting periods beginning during each of fiscal years 1999 through 2002, subject to subparagraph (J), the Secretary shall update such amount by a factor equal to the market basket percentage increase.
>
> (iii) In applying clause (ii)(I) in the case of a hospital or unit, the Secretary shall provide for an appropriate adjustment to the labor-related portion of the amount determined under such subparagraph to take into account differences between average wage-related costs in the area of the hospital and the national average of such costs within the same class of hospital.

42 U.S.C. § 1395ww(b)(3)(H).

In light of the statute's silence, the Secretary may promulgate rules regarding the calculation of a hospital's target-rate after September 30, 2002. In the present case, the Secretary issued new rules regarding the calculation of target rates that took affect October 1, 2002. *See* Changes for Hospitals and Hospital Units Excluded From the Acute Care Hospital Inpatient Prospective Payment System, 67 Fed. Reg. 50,103, 50,104 (Aug. 1, 2002). The new rules provide that beginning on or after October 1, 2002, payments to excluded hospitals were no longer subject to caps on the target amount and that the ceiling would be computed using the hospital's target amount from the previous cost reporting period updated by the rate-of-increase specified in § 413.40(c)(3)(viii) of the regulations. Once that number is determined, it is then multiplied by the number of Medicare discharges. *Id.* Moreover, in

response to a request to clarify how the target rate for fiscal year 2003 would be calculated, the Secretary wrote:

> Our regulations at §413.40(c)(4)(ii) state that "the target amount equals the hospital's target amount for the previous cost reporting period, increased by the update factor for the subject cost reporting period." Thus, for cost reporting periods beginning in FY 2003, the hospital unit should use its previous year's target amount, updated by the appropriate rate-of-increase percentage.

*Id*.

The court finds that the Secretary's new rule is reasonable. Title 42, section 413.40(c)(4)(ii) of the Code of Federal Regulations provides:

> Target amounts. The intermediary will establish a target amount for each hospital. The target amount for a cost reporting period is determined as follows:
>
> * * *
>
> (ii) Subject to the provisions of paragraph (c)(4)(iii) of this section, for subsequent cost reporting periods, the target amount equals the hospital's target amount for the previous cost reporting period increased by the update factor for the subject cost reporting period, unless the provisions of paragraph (c)(5)(ii) of this section apply.

Defendants point out that § 413.40(c)(4)(ii) reflects the approach prescribed by §1395ww(b)(3)(A)(ii). Section 1395ww(b)(3)(a)(ii) provides:

> Except as provided in subparagraph (C) and succeeding subparagraphs, and in paragraph (7)(A)(ii), for purposes of this subsection, the term "target amount" means, with respect to a hospital for a particular 12-month cost reporting period--
>
> * * *
>
> (ii) in the case of a later reporting period, the target amount for the preceding 12-month cost reporting period,
>
> increased by the applicable percentage increase under subparagraph (B) for

that particular cost reporting period.

Having reviewed § 413.40(c)(4) in conjunction with § 1395ww(b)(3)(a)(ii), the court finds that the defendants' actions were not arbitrary and capricious. Because the court finds that defendants' actions were not arbitrary and capricious, the court will not address defendants' argument that the case should be remanded.

## IV.  CONCLUSION

Section 1395ww(b)(3)(H) is silent as to how a hospital target rates will be calculated after September 2002. Because of the statute's silence, the court defers to the Secretary's interpretation of the statute, which provides that the State Hospital's target rate after September 2002 would be based on its target rate for the previous year increased by an update factor for that particular year. Accordingly, the court grants defendants' motion for summary judgment [Doc. #22] and denies plaintiff's motion for summary judgment [Doc. # 19].

IT IS SO ORDERED this 8th day of October, 2008.

_____
UNITED STATES DISTRICT JUDGE